**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JON BARTON JACOB,

    Defendant-Appellant.

No. 99-2327
(D.C. No. CR-98-815-JC)
(D. N.M.)

**ORDER AND JUDGMENT** *

Before **BALDOCK, ANDERSON,** and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Jon Barton Jacob appeals from his convictions for attempting to evade or defeat tax in violation of 26 U.S.C. § 7201, and from a sentence requiring that he

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pay all back taxes due as a condition of his supervised release. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, affirm his convictions, and remand for resentencing.

## I. Facts and prior proceedings

The evidence and all reasonable inferences derived therefrom is presented here in a light most favorable to the government. *See United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999). Mr. Jacob is a long-time tax protester, *see Jacob v. Illanes*, No. Civ. 93-916 JB, 1993 WL 618334, at *2 (D.N.M. Dec. 21, 1993) (finding that Mr. Jacob belongs to "a small group of tax protesters . . . filing frivolous complaints" in the district of New Mexico), who has refused to file or to voluntarily pay income taxes since 1984. He considers himself not to be "subject to the [tax] laws of the United States," and has long argued that "the United States is a foreign state without power to assess penalties and interest [for failure to pay taxes] or to impose [tax] liens against his property." *Jacob v. United States*, No. 94-2127, 1994 WL 596798, at **2 (10th Cir. Nov. 2, 1994) (noting that "[w]e have consistently rejected such arguments as lacking in legal merit and patently frivolous" and affirming district court's award of sanctions and injunction prohibiting the filing of further complaints until Mr. Jacob paid all outstanding sanctions) (unpublished); *see also Jacob v. United States*, No. 94-2127, 1995 WL 18238, at **1 (10th Cir. Jan. 5, 1995) (imposing further

sanctions because Mr. Jacob continued to restate same frivolous "tax protester" arguments) (unpublished). The record shows that, since 1987, Mr. Jacob has continued to refuse to voluntarily pay taxes, has sued the IRS agent who investigated his failure to file taxes, has brought suit against a company that owed him money and paid it to the Internal Revenue Service (IRS) pursuant to a valid tax lien, and began hiding his assets so that the IRS could not seize them. Within a week of receiving notice that the IRS was commencing collection proceedings, Mr. Jacob also leased his apartment and placed his utilities under his sister's name. After the IRS seized his car, he bought another one and placed its registration and insurance under his sister's name.

In 1998 a jury found Mr. Jacob guilty of five counts of attempting to evade or defeat federal income taxes from 1987 through 1995. The government presented undisputed evidence of Mr. Jacob's tax liability (exclusive of penalties and interest) for those years, and the district court ordered Mr. Jacob to pay that amount as a condition of supervised release. *See* R. Doc. 91 at 3. Mr. Jacob appeals his convictions and the special sentencing condition.

## II. Discussion

A. Sufficiency of the evidence - Count I.     The essential elements of a violation of § 7201 [1] are (1) willfulness; (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *See Sansone v. United States*, 380 U.S. 343, 351 (1965); *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir.), *cert. denied*, 120 S. Ct. 2661 (2000). Count I of the indictment charged that, from 1988 through 1996, Mr. Jacob attempted to evade and defeat payment of taxes owed for the years 1987-1991 by concealing assets, making false statements to agents, placing funds and property in the names of others, and attempting to interfere with IRS collection efforts. *See* R. Doc. 52, at 1. Mr. Jacob first argues that there was insufficient evidence to sustain his conviction under Count I. "[I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo, and ask only whether taking the evidence--both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Hanzlicek*, 187 F.3d at 1239 (quotations omitted).

---

[1] Section 7201 provides, in relevant part: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony."

To support conviction, the government submitted, and the district court admitted, certificates of assessment from 1987-1989 without objection and, with objection from Mr. Jacob, a Tax Court judgment establishing Mr. Jacob's tax deficiency for 1987-1988. The government also presented (without objection) testimony from two IRS agents that they calculated tax deficiencies for 1987-1991 based on income information obtained from Mr. Jacob's employers, together with supporting documents.

Specifically, Mr. Jacob argues that the government's evidence establishing a tax deficiency for each year between 1987 and 1991 (1) was not legally sufficient; (2) was erroneously admitted because it was irrelevant; and (3) was erroneously admitted because it invaded the province of the jury to determine any tax deficiency for themselves. He also argues that the Tax Court judgment was erroneously admitted because judgments rendered in civil actions generally are not given collateral estoppel effect in a subsequent criminal prosecution.

Mr. Jacob concedes that his allegations of error numbered (2)-(3) are reviewed only for plain error because of his failure to object at trial. *See Jones v. United States*, 527 U.S. 373, 388-89 (1999). "Plain error is fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *United States v. Burson*, 952 F.2d 1196, 1199 (10th Cir. 1991) (quotations omitted).

We have held that certificates of assessment are admissible in criminal tax evasion trials as evidence "to prove the act, transaction or occurrence as a memorandum of which the same were made or kept." *Holland v. United States*, 209 F.2d 516, 521 (10th Cir.), *aff'd*, 348 U.S. 121 (1954) (quotation omitted). The certificates of assessment are relevant, probative, and admissible evidence of the tax deficiency determined by the IRS. The revenue agents' testimony, reports, and summaries were also probative evidence from which the jury could determine that Mr. Jacob had a substantial tax deficiency. *See Swallow v. United States*, 307 F.2d 81, 83-84 (10th Cir. 1962). Although these kinds of documentary and testimonial evidence are admittedly strong evidence of tax liability, allowing the jury to consider the evidence did not invade the jury's province to determine whether a substantial tax deficiency existed, especially in light of the district court's instructions to the jury that it could reject the testimony of any witness and its instruction on how to calculate income taxes. Further, although the Tax Court judgment did not conclusively establish the existence of a tax deficiency beyond a reasonable doubt (and the government did not request an instruction on collateral estoppel and it was not admitted for its preclusive effect), the judgment was admissible as prima facie evidence that a valid tax deficiency existed. *Cf. United States v. Silkman*, 156 F.3d 833, 835 (8th Cir. 1998) (certificates of assessment are prima facie evidence of a tax deficiency in criminal tax evasion

case). The evidence presented by the government was legally sufficient to support a conviction for violation of § 7201.

B. Sufficiency of the evidence - Counts II-V. Counts II-V of the indictment charged Mr. Jacob with willfully attempting to evade and defeat taxes owed from 1992-1996 by (1) failing to make income tax returns, (2) failing to pay income taxes due, and (3) by concealing and (4) attempting to conceal from the IRS the nature and extent of his true income. *See* R. Doc. 52 at 2, 3, 4. Mr. Jacob alleges that the "sole affirmative act of evasion alleged" in the indictment on these counts was "concealing income" for those years. Appellant's Br. at 11-12. He also argues that, since the agents testified that they obtained Mr. Jacob's income figures for those years from 1099 forms, it was impossible for him to conceal or attempt to conceal his income no matter what he did. Appellant's Br. at 11-12. Clearly, both arguments are without merit. The indictment alleged more affirmative acts of evasion than concealment. Further, just because Mr. Jacob was unsuccessful in attempting to conceal his income by failing to report it does not mean that he did not make that attempt. *See Sansone*, 380 U.S. at 351. If he had not been audited, his attempt would have been successful. Mr. Jacob did not, as he puts it, merely fail to file taxes. As the record shows, he actively placed assets beyond the reach of the IRS and

offensively resisted collection efforts. The evidence was sufficient to support the element of affirmative acts of evasion.

C. Exclusion of testimony. Mr. Jacob next argues that the district court erred in restricting his testimony regarding his beliefs about the tax law, thereby erroneously diminishing his ability to negate the element of willfulness. We review the court's exclusion of testimony for abuse of discretion, *see United States v. Willie*, 941 F.2d 1384, 1392 (10th Cir. 1991), and disagree. Before Mr. Jacob took the stand, the district court ruled that he could testify about his understanding of tax laws and about what materials affected that understanding. *See* Tr. Vol. VI at 385. A review of the transcript of the hearing shows that Mr. Jacob testified at length about his study of tax statutes and laws, Supreme Court tax cases, and the Constitution. *See id.* at 400-12. He explained why he did not file returns beginning in 1985 based on his understanding. He further testified about the influence that published tax protesters like Otto Skinner and a Mr. Richey had upon his understanding of tax laws and why he now believed his income from working could not be validly taxed, making him exempt from filing income tax returns. *See id.* at 413-47. The only thing the district court did not allow Mr. Jacob to do was read from the materials he brought with him or admit them into evidence, or to expound without limitation on what he thought the law should be. In *Willie*, we held that legal materials may be properly excluded when

they may confuse the jury or be used for an improper purpose, relying in part on our prior holding in *United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987), that "direct testimony regarding [the] effect of publications on defendant's understanding of tax law filing requirements [is] more probative than [the] publications themselves." *Willie*, 941 F.2d at 1395. We further explained that "[a] normative belief that the law should not apply to him leaves [the defendant] fully aware of his legal obligations and simply amounts to a disagreement with his known legal duty and a studied conclusion . . . that [the law is] invalid and unenforceable," and is irrelevant. *Id.* at 1392 (quotation omitted). The court did not abuse its discretion in limiting Mr. Jacob's testimony or in excluding the exhibits.

D. The special sentencing condition. Finally, citing *United States v. Franks*, 723 F.2d 1482, 1487 (10th Cir. 1983), Mr. Jacob argues that the court's imposition of a special condition of supervised release requiring him to pay back taxes in the amount of $154,444 was improper. We review the court's imposition of a special sentencing condition for abuse of discretion. *See United States v. Ensminger*, 174 F.3d 1143, 1148 (10th Cir. 1999). Under *Franks*, a court may order a defendant to pay a specific amount in unpaid back taxes as a sentencing condition if the specific amount has "been acknowledged, conclusively established in the criminal proceeding, or finally determined in civil

proceedings." 723 F.2d at 1487. Mr. Jacob argues that none of these requirements were met as to the amounts due from 1989-1995 because the jury made no specific determinations on the amount of back taxes owed for those years and his tax liability for those years has not been finally determined in a civil proceeding. Citing no authority, the government argues that presenting evidence of Mr. Jacob's income, filing status, and deductible business expenses was enough to conclusively establish the taxes due for 1989-1995 at the criminal trial.

We first note that the government does not have to establish the exact amount of back taxes due in order to establish a violation of § 7201 - it must simply establish that a substantial tax deficiency exists. *See U.S. v. Kaatz*, 705 F.2d 1237, 1246 (10th Cir. 1983). In *Franks*, we reversed the district court's special condition of probation because the government conceded that it was arbitrarily imposed. *See* 723 F.2d at 1487. However, we also noted that "there was no factual determination made at the trial . . . of the amount of tax that the defendants might owe the United States," and cited several cases for the proposition that restitution in a specific amount for the back taxes could not be required absent acknowledgment, conclusive establishment at the criminal trial, or existence of a civil tax judgment. *See id.* Several of these cited cases indicate that "conclusively established" means a definitive determination or adjudication by a court or jury of the amount of taxes owed. *See, e.g., United States v.*

*Touchet*, 658 F.2d 1074, 1076 (5th Cir. 1981); *United States v. Stoehr*, 196 F.2d 276, 284 (3rd. Cir. 1952) (holding that since the exact amount due is not normally determined in the criminal action, determination of the amount owed must await the defendant's acquiescence or final civil judicial determination). Thus, in order to comply with *Franks*, absent the defendant's acquiescence, if the government wishes restitution of back taxes in a criminal action for tax evasion without first civilly litigating the exact amounts due, it must give notice of its intent to establish (by a preponderance of the evidence) the amount due and obtain a special jury verdict as to the exact amount. *Cf. United States v. Helmsley*, 941 F.2d 71, 102 (2d Cir. 1991) (noting majority view stated in *Franks* but holding that defendant had acquiesced in amount by failing to object to the amounts submitted in the presentence report and by adopting the figures while arguing mitigating circumstances). The district court abused its discretion by requiring, as a special sentencing condition, payment of back taxes that have not been conclusively established. We therefore reverse Mr. Jacob's sentence as to the amounts imposed for taxes due except for the amounts established by the Tax Court judgment.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED; the sentence is AFFIRMED IN PART and REVERSED IN PART; and the case is remanded for resentencing.

Entered for the Court

Robert H. Henry
Circuit Judge