UNITED STATES of America, Plaintiff–Appellee,

v.

Rada TODOSIJEVIC, Defendant–Appellant.

No. 97–1691.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1997.

Decided Nov. 25, 1998.

Brian P. Netols (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

James A. Graham (argued), Chicago, IL, for Defendant–Appellant.

Before WOOD, JR., COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant Rada Todosijevic and her husband Ljubo were convicted on charges of bank fraud, making false statements to a financial institution, perjury, obstruction of justice, and bankruptcy fraud. Rada appeals her conviction. We affirm.

## I

### FACTS

In the late 1980s, Rada Todosijevic and her husband Ljubo were engaged in running two businesses in Chicago—a travel agency known as Kompas Travel, and Slavoff Imports, through which they sold Yugoslavian newspapers and magazines. In April 1989 the Todosijevics jointly applied for a mortgage loan from Cragin Federal Bank (of Chicago, Illinois) to purchase the property which housed their home and place of business. Cragin required that their written application include copies of their recent tax returns. They complied and submitted documents which they claimed were copies of their tax returns for the taxable years 1987 and 1988. The documents submitted were in fact fraudulent, as the Todosijevics had failed to file tax returns for 1987 and 1988. Based in part on this fraudulent information, Cragin approved a $255,000 loan for the Todosijevics.

On July 13, 1990, the Todosijevics once again returned to Cragin, seeking to refinance the 1989 loan of the above referred to real estate. The written loan application included a question asking Rada and Ljubo "Are you a party in a lawsuit?" Ljubo and Rada both answered "No." This was a misrepresentation on the part of Ljubo, for in fact he *was* a party to a lawsuit pending at that time: in October 1989 a company named German Language Productions ("GLP") had filed suit against Ljubo, Slavoff Imports, and Kompas Travel, alleging that those defendants were tortiously interfering with GLP's business. Rada endorsed Ljubo's misrepresentation by attesting, in the verification section of the application, that "all statements made in this application are true." Rada claims that this was an inadvertent misrepresentation because she knew nothing about

the GLP lawsuit at the time she signed the application, but the jury did not believe her. In any event, Cragin approved a refinance loan of $245,000 and made out a check to the Todosijevics for $55,000.

A little less than a year later, on June 10, 1991, GLP received a default judgment from the district court and commenced an Enforcement Action against Ljubo and the two family businesses. Rada was deposed on July 25, 1991, as part of the Enforcement Action, and, just as she had done when applying for the original Cragin loan in 1989, she tendered copies of fraudulent joint tax returns for herself and Ljubo (for the taxable years 1988 and 1989). GLP deposed Ljubo on August 6, 1991, and he once again gave false testimony and submitted the fraudulent tax returns that his wife had offered two weeks earlier. On August 7, 1991, the day after Ljubo's deposition, he filed a chapter 11 bankruptcy petition, on behalf of himself as well as his Slavoff and Kompas business enterprises. The bankruptcy court ordered a stay on the Enforcement Action and appointed a trustee to assume control over the Todosijevics' personal and business assets. Rada, in an attempt to circumvent the trustee's control, formed a new corporation, named K.N.O.A. Imports, and tried to transfer Slavoff's newspaper-selling operations to this new entity. Her scheme was short-lived, for GLP became aware of K.N.O.A. Imports and requested the bankruptcy court to add the newly-formed corporation as a defendant in the Enforcement Action. On August 15, 1991, Rada filed her own chapter 11 bankruptcy petition, for herself and K.N.O.A. The bankruptcy court ordered that Rada's bankruptcy action be consolidated with Ljubo's bankruptcy action, and placed Rada's property and K.N.O.A. under the control of the same bankruptcy trustee supervising Ljubo's property and the Todosijevics' other businesses.

The trustee retained the services of an auctioneer to auction the Todosijevics' property, and on August 26, 1991, while the auctioneer was preparing the inventory, Ljubo offered him $200 requesting that he not include certain items. The auctioneer refused the $200 offer and reported the incident to the trustee, which resulted in one of the bankruptcy fraud charges filed against Ljubo (for attempted bribery, 18 U.S.C. § 152).

Two months later, on November 1, 1991, the Todosijevics defaulted on their 1990 refinancing loan payments with Cragin, and in turn Cragin filed a foreclosure action in Cook County Circuit Court. After the foreclosure was reduced to judgment, a foreclosure sale was set for March 22, 1994, but on that very day Rada filed a chapter 13 bankruptcy petition, and the court entered a stay on the sale. At this time Rada falsely asserted that she had not previously filed for bankruptcy. She also failed to list GLP as one of her creditors, even though she had been found partially liable in the Enforcement Action for the GLP judgment.

On November 16, 1994, a federal grand jury charged Rada and Ljubo in a nine count indictment in the district court. Ten months later, on September 27, 1995, a ten count, second superseding indictment was filed, charging Rada and Ljubo with bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; making false statements to a financial institution, in violation of 18 U.S.C. §§ 1014 and 2; perjury, in violation of 18 U.S.C. § 1623; obstruction of justice, in violation of 18 U.S.C. § 1503; and bankruptcy fraud, in violation of 18 U.S.C. § 152. Most of the counts named both Rada and Ljubo jointly as defendants, but some counts named Rada and/or Ljubo individually (Count Six charged Ljubo with perjury; Counts Eight and Nine charged Ljubo with bankruptcy fraud; and Count Ten charged Rada with bankruptcy fraud). Before trial, Rada and Ljubo, husband and wife, alleged that the indictment had improperly joined them, and they filed a motion for severance, which the judge denied, agreeing with the government that the activities of the defendants were all part of a common scheme. The two were tried before a jury and were found guilty on all counts except Count Nine (the court had dismissed Count Nine before trial, upon the motion of the government). Both were sentenced to a term of twenty-one months imprisonment under the applicable sentencing guidelines.

Rada argues that there was insufficient evidence to convict her on Counts Two (bank

fraud) and Five (making false statements to a financial institution), both of which alleged that Rada, on the 1990 refinancing loan application, intentionally concealed from Cragin the fact that Ljubo was a defendant in the GLP lawsuit. Rada further argues that her convictions must be reversed because the district court erroneously rejected her pretrial motion alleging improper joinder of defendants under Fed.R.Crim.P. 8(b) and seeking severance under Fed.R.Crim.P. 14.

## II

### SUFFICIENCY OF EVIDENCE

■ **Waiver.** Rada contends that the government failed to submit evidence at trial to establish that, at the time she signed the 1990 refinancing application, she knew that Ljubo was a defendant in the GLP lawsuit. We agree with the government that she has waived this sufficiency of the evidence argument because she failed to raise this issue before the trial court, as required by Fed. R.Crim.P. 29. *See United States v. Archambault,* 62 F.3d 995, 998 (7th Cir.1995) ("[T]here is nothing in the record to indicate that [defendant] raised his challenge to the sufficiency of the evidence by way of a timely motion for a judgment of acquittal at the close of the evidence or within the seven-day period following the verdict, Fed.R.Crim.P. 29. 'Failure to do either waives any challenge on appeal to the sufficiency of the evidence....'") (quotation omitted). Even though Rada did present a Rule 29 motion to

the trial court, the motion she presented fell short of preserving her current appeal, because she rests her current challenge on grounds *different* from those she relied on in her motion to the trial court. At the close of evidence, Rada and her husband brought a Fed.R.Crim.P. 29 motion on three grounds, none of which pertained to the subject matter of her current appeal.[1] Significantly, the trial judge, before ruling on her motion, *on two separate occasions queried the defendants' counsel as to whether there were any other possible grounds for the Rule 29 motion.*[2] Rada had the opportunity at that time to raise the sufficiency of evidence claim she asks us to review, but she failed to do so. Accordingly, under the law of this Circuit, *see United States v. McDonough,* 603 F.2d 19, 21 (7th Cir.1979), she has waived her right to raise this challenge on appeal. In *McDonough,* the defendant-appellant asked this Court to reverse his conviction, challenging "the sufficiency of the Government's evidence showing that the offense was committed in the District." *Id.* at 21. We held that the defendant had waived his right to raise this "venue" issue on appeal by failing to raise it in a timely fashion before the trial court: although he had properly moved for acquittal at the close of the government's case, his motion had been based upon *grounds other than venue.* Thus, on appeal, the *McDonough* defendant was restricted to challenging the district judge's decision solely on the grounds he relied upon at trial. *Id.* at 21.[3]

1. The three grounds presented by Rada and her husband at trial were: (1) there was insufficient evidence to sustain Count Nine; (2) there was insufficient evidence for a conviction on Count Seven (obstruction of justice), because the government could only point to perjury as a basis for this count, but perjury by itself, according to the defendants, cannot give rise to a conviction for obstruction of justice; and, (3) there was insufficient evidence for a conviction on Counts Two and Five, because the government had offered no proof that there was a direct causal relationship between Rada's false statement on the loan application and the bank's decision to approve the loan. The judge, after deciding that the first prong of the motion was moot because Count Nine had been dismissed before trial, denied the remaining two prongs.

2. The judge stated, at two different points, "Let me just ask you now, procedurally, do you have

more in your Rule 29 motion, or is this—is it directed at these two counts?"; and, additionally, "Anything further?"

3. We arrived at a similar conclusion in a more recent case, *United States v. Moya–Gomez,* 860 F.2d 706 (7th Cir.1988), although our conclusion in that case was dicta. In *Moya–Gomez,* the defendant presented a timely motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29. On appeal, he requested that we review the district court's denial of the motion, but he relied on different grounds than he had in the motion he brought to the district court. We held that the defendant waived the sufficiency of evidence argument on all grounds except that which he relied upon at the trial court level. *See id.* at 745–46 n. 33.

This ruling was not precedential because it was dicta: since the government did not argue on

■ *Analysis.* Inasmuch as Rada has waived her sufficiency of the evidence claim, she is entitled to a reversal of her conviction only if she demonstrates plain error. *See United States v. Meadows*, 91 F.3d 851, 854 (7th Cir.1996). The "requirements for plain error are met with respect to sufficiency of the evidence claims 'if the record is devoid of evidence pointing to guilt, or if the evidence on a key element was so tenuous that a conviction would be shocking.'" *Id.* at 855, quoting *United States v. Wright*, 63 F.3d 1067, 1072 (11th Cir.1995) (other citations omitted).

■ Since there was ample evidence in the record to sustain the jury's verdict that Rada did in fact have knowledge that Ljubo was a defendant in the GLP action, the record is certainly not "devoid of evidence pointing to guilt," and Rada has thus failed to meet the plain error standard. Rada argues that the evidence, relating to her extensive involvement in the family businesses as well as her pattern of fraudulent behavior, was only *circumstantial* and not *direct*, and thus insufficient to convict her, but her position is undercut by the well established doctrine that a jury's verdict may be founded upon circumstantial evidence. *See United States v. Rose*, 12 F.3d 1414, 1417 (7th Cir.1994) ("[I]t is accepted that a jury's verdict may rest solely upon circumstantial evidence. Case law recites that circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable.") (citation and internal quotation omitted). According to the evidence at trial, Rada was an essential part of the family business enterprises, integrally involved both with their management as well as day-to-day operations. She personally met with Slavoff's suppliers, and even traveled overseas to do so. Ljubo kept her well apprised and involved any time the businesses faced financial problems: GLP, before filing the October 1989 lawsuit, sent Ljubo a letter (August 1989) stating that GLP considered that he had violated its rights and that GLP would be seeking "appropriate damages." Ljubo showed this letter to Rada. Rada's complete involvement in the family's business affairs, including her awareness of GLP's threats regarding those businesses, demonstrate the likelihood that Ljubo informed Rada at the time GLP filed suit.

The government also presented evidence that, after the bankruptcy trustee assumed control of Slavoff Imports, Rada sought to continue its operations by starting up K.N.O.A. Imports; thus it is obvious that she had extensive familiarity with the inner workings of Slavoff Imports. The government also submitted evidence that Rada had engaged in a number of fraudulent activities *besides* the misrepresentation in the 1990 refinancing loan application: for instance, she submitted falsified tax returns both in the 1989 loan application and in her 1991 deposition, and she also included demonstrably false information in her 1994 bankruptcy petition.

After reviewing the evidence in the light most favorable to the government, we are convinced that the government presented sufficient evidence upon which a rational jury could reasonably conclude that Rada knew of the GLP lawsuit when she signed the refinancing application. Accordingly, we refuse to disturb the jury's verdict and reject Rada's sufficiency of the evidence claim.

### III

### JOINDER AND SEVERANCE

Rada further alleges that the trial court improperly denied her motion alleging improper joinder (pursuant to Fed.R.Crim.P. 8) and seeking a trial separate from her husband (pursuant to Fed.R.Crim.P. 14).

#### A.

#### Joinder

■ A claim of misjoinder is reviewed *de novo, see United States v. Stillo*, 57 F.3d 553, 557 (7th Cir.1995).

"When two or more defendants are involved in a joint indictment, our analysis of the joinder question proceeds under Fed.

appeal that the defendant had waived his argument, we held that "[t]he government therefore has waived [the defendant's] error." *Id.* (citations omitted).

R.Crim.P. 8(b)." *United States v. Diaz*, 876 F.2d 1344, 1355 (7th Cir.1989) (citations omitted). Rule 8(b), which requires examination of joinder from the perspective of the allegations contained in the indictment and not the evidence adduced at trial, *see United States v. Bruun*, 809 F.2d 397, 406 (7th Cir.1987), allows charging in the same indictment two or more offenders "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). Proper joinder of defendants thus "depends on the meaning of 'same series of acts or transactions.'" *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir.1985). "The usual meaning is acts or transactions that are pursuant to a common plan or common scheme." *Id.* (citations omitted).

▬ We hold that the very language of the indictment supports joinder of Rada and Ljubo, since all ten counts of the indictment recite and set forth a joint, systematic, integrated fraudulent venture on the part of each of the defendant-appellants designed to defraud creditors. According to the indictment, the defendants, through the use of false statements and false tax returns, induced Cragin to loan them money, and then filed a fraudulent bankruptcy petition in an effort to avoid having to pay it back. Furthermore, the indictment alleged that the defendants' fraudulent actions directed at Cragin were part and parcel of their fraudulent actions directed at GLP: Ljubo and Rada tried to defraud *Cragin* by lying about Ljubo's participation in the *GLP* lawsuit; and, additionally, Ljubo and Rada tried to prevent *GLP* from collecting on its judgment by obtaining a (fraudulently-obtained) refinancing loan from *Cragin* which in effect eliminated any equity that the defendants had in their home. "Upon this basis, there is

a clear relationship between the . . . transactions demonstrating a common plan or scheme," *Diaz*, 876 F.2d at 1356, and we thus agree with the trial court's finding that joinder was proper.

▬ Even if there were misjoinder as the appellant alleges, we would not reverse the trial court's denial of her misjoinder motion, because "an error involving misjoinder . . . requires retrial only if the misjoinder results in actual prejudice," *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), and the appellant has not demonstrated actual prejudice. "In *Lane*, the Supreme Court relied upon the presence of instructions requiring the jury to consider each defendant separately, the likelihood that evidence relating to the misjoined count would have been admitted in a separate trial and the strong evidence of the defendant's guilt in concluding that the misjoinder was harmless." *Diaz*, 876 F.2d at 1356, citing *Lane*, 474 U.S. at 450, 106 S.Ct. 725. Applying the *Lane* factors to Rada's situation, it is clear that Rada was not prejudiced by being tried with Ljubo. Initially, at Rada and Ljubo's trial, the judge instructed the jury to consider the cause of each defendant separately, reciting to the jury

> [a]lthough the defendants are being tried jointly, you must give separate consideration to each defendant. In doing so, you must analyze what the evidence in the case shows with respect to each defendant, leaving out of consideration any evidence admitted solely against the other defendant. Each defendant is entitled to have his or her case decided on the evidence and the law applicable to him or her.

Secondly, the vast majority of the evidence admitted in the joint trial would have been admissible had Rada been tried alone.[4] And, lastly, the evidence introduced against Rada,

---

4. In her brief, Rada directs our attention to a small quantum of evidence which pertained solely to Ljubo, including "the fact that defendant's husband attempted to bribe the auctioneer, as well as his perjury at the recovery hearing." However, as noted, the judge instructed the jury that if evidence were submitted solely against Ljubo, this evidence should not be used against Rada, and we presume that the jury followed its instructions, *see Doe v. Johnson*, 52 F.3d 1448,

1459 (7th Cir.1995). Moreover, the bribery charge was a minor incident in the context of the entire indictment (the indictment involved hundreds of thousands of dollars, and the bribery charge involved $200), and, as for the charge that Ljubo perjured himself, this involved the tendering of fraudulent *joint* tax returns for *himself and Rada*, and Rada herself was also charged with tendering these same joint tax returns (in Count Seven).

as discussed previously, was overwhelming. Thus, Rada has failed to demonstrate actual prejudice.

### B.

### Severance

 Our decision regarding joinder allows us to dispense with Rada's claim that the trial judge erred when he denied her motion to sever. "In order to appeal successfully the denial of a severance motion, a defendant must establish actual prejudice resulting from the denial." *United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir.1988) (citations omitted). As explained in the previous section, Rada has failed to establish that she was prejudiced by being tried with her husband Ljubo; her claim regarding severance thus fails.

AFFIRMED.